QUESTIONS:
1. Does "subject to regulation by" in s. 112.313(2), F.S., mean that a legislator-attorney must disclose the name of a client who is regulated by a state agency, when the legal representation has no relation to the official capacity in which the client is regulated by the state?
2. If the answer to question 1 is in the affirmative, which professions and occupations are regulated by the state within the purview of s. 112.313(2), F.S.?
3. If the answer to question 1 is in the affirmative, does s.112.313(2), F.S., require that there be disclosure of a client who is regulated by the state, but who was represented by the legislator-attorney only prior to the latter's election to office?
4. Is the answer to question 1 altered by the fact that the legislator-attorney involved is a member of a law firm which is a professional service corporation, and not a partnership?
SUMMARY:
A legislator-attorney must file a sworn statement disclosing his representation of a client which is a regulated business entity, even though he does not represent that client in connection with such regulation.
The professions and occupations which are "regulated" are those over which a public agency exercises control and authority, and include those professions and occupations regulated in accordance with Chs. 454-486, F.S., and many others.
A legislator-attorney need not file a sworn statement disclosing an agency relationship with a regulated business entity if that relationship has terminated prior to the legislator's election to office.
Pending legislative or judicial clarification, a legislator-attorney who is a member of a professional service corporation should file a sworn statement disclosing all clients of that corporation which are regulated business entities, whether he personally represents them or not.
AS TO QUESTION 1:
Section 112.311, F.S., the Standards of Conduct Law, declares the legislative policy to be that no member of the legislature have any interest, financial or otherwise, direct or indirect, or engage in any business, transaction, or professional activity or incur any obligation of any nature which is in substantial conflict with the proper discharge of his duties in the public interest.
In order to implement the foregoing policy, the legislature requires, inter alia, that a legislator, who is an officer, director, agent, or member of, or owner of a controlling interest in, any corporation, firm, partnership, or other business entity which is subject to the regulation of any state agency, county, city, or other political subdivision of the state, file with the Department of State a sworn statement disclosing such interest, s.112.313(2), F.S. As noted in AGO 072-172, the purpose of this requirement is to bring out into the open a legislator's private interests which are presently or potentially a source of conflict with his public duties.
As regards the applicability of the disclosure requirement to a legislator-attorney, it has been long settled in this state that an attorney's relationship to his client is one of principal and agent. Griffith v. Investment Co., 110 So. 271 (Fla. 1952); AGO's S.C. 67-12 and S.C. 69-12. Further, it has been ruled by this office, most recently in AGO 074-27, that this agency relationship is within legislative contemplation as expressed in s. 112.313(2), supra, thus requiring a legislator who is a practicing attorney to file a sworn statement disclosing representation by him of clients who are business entities regulated by a public agency. Attorney General Opinions 074-1, 074-2, and 074-3.
Since the purpose of the disclosure requirement, as noted previously, is to expose present or potential sources of conflict, the fact that the legislator-attorney may not represent his client in connection with the state's regulation of that client is inconsequential. So long as the client is regulated by a public agency, the legislator-attorney should disclose his agency relationship with that client. Attorney General Opinion 074-27.
AS TO QUESTION 2:
It was ruled in AGO 072-172 that "regulation" within the purview of s. 112.313(2), supra, means something more than mere issuance of an occupational license. In an earlier opinion of this office, regulation was defined as prescribing the manner in which a thing is to be done. Business entities "subject to the regulation of" a state or local governmental agency, for purposes of s. 112.313(2), were described therein as those businesses whose operations or modes of doing business are subject to the control or authority of such an agency. Attorney General Opinion S.C. 68-2. Accord: Attorney General Opinions 074-3 and 074-27. Business entities which have been held to be subject to regulation within the meaning of s.112.313(2), include law firms, 072-172; motels, 073-114; real estate corporations, letter dated March 24, 1972; and engineering firms, AGO's S.C. 67-14 and 073-396. In addition, and without intending to be exhaustive, other examples of regulated business entities include insurance companies, motor carriers, public utilities, and any of the professions and occupations regulated in accordance with Chs. 454-486, F.S. Additional examples of regulated business entities would also include pari-mutuel establishments and the alcoholic beverage industry.
AS TO QUESTION 3:
Section 112.313(2), supra, applies if a legislator "is an officer, director, agent or member of, or owns a controlling interest in" a regulated business entity. Moreover, as noted previously, the purpose of the Standards of Conduct Law has been interpreted to be the prevention of present or prospective conflicts of interest. Attorney General Opinion 074-27. Therefore, I am of the opinion that a legislator-attorney need not file a sworn statement disclosing an agency relationship with a regulated business entity if that relationship has terminated prior to the legislator's election to office.
AS TO QUESTION 4:
Your fourth question concerns the effect, if any, of the Professional Service Corporation Act, Ch. 621, F.S., on the application of the Standards of Conduct Law to a legislator-attorney. In this regard, it is clear that the Professional Service Corporation Act does not dissolve the agency relationship between an attorney and his client merely because the attorney is a member of a professional service corporation. Section 621.07 provides in pertinent part as follows:
"Nothing contained in this act shall be interpreted to abolish, repeal, modify, restrict or limit the law now in effect in this state applicable to the professional relationship and liabilities between the person furnishing the professional services and the person receiving such professional service and to the standards for professional conduct . . . ." (Emphasis supplied.)
Therefore, a legislator-attorney, having a client who is regulated by a public agency, must file a sworn statement of such attorney-client relationship, regardless of the fact that the legislator-attorney belongs to a professional service corporation.
With respect to the applicability of the disclosure requirement to a legislator-attorney who, although not personally representing a regulated business entity, is a member of a professional service corporation which has a regulated business entity as a client, the Professional Service Corporation Act may have an effect.
As previously indicated, in order for the disclosure requirement of s. 112.313(2), supra, to apply to a legislator, he must be an officer, director, agent, or member of, or owner of a controlling interest in, a regulated business entity. In an earlier opinion of this office, it was held that a law firm is a regulated business entity, AGO 072-172, and this remains true even though the firm is organized as a professional service corporation. See In the Matter of The Florida Bar, 133 So.2d 554 (Fla. 1961). As for the clients of the professional service corporation which are regulated business entities themselves, if the legislator-attorney is not an officer, director, member, or owner of a controlling interest in such clients, he must be their agent in order for the express terms of s. 112.313(2) to require disclosure.
It was previously ruled by this office that all partners in a law firm are the "agents" of the firm's clients within the purview of s. 112.313(2), supra. Attorney General Opinion S.C. 67-12. Accord: Attorney General Opinion 074-1. This decision was the result of two primary considerations: First, it was stated that a partner acts for himself and is the agent for his partners, citing 24 Fla. Jur. Partnership s. 70, p. 367, and that the acts of one partner are presumed to be known to all members of the partnership firm, citing Curry v. Wright, 134 So. 508 (Fla. 1931), reh. den.136 So. 643. This position was buttressed by the economic fact that the income of the firm's partners in representing particular clients was partnership income.
Second, it was stated that the overriding concern of this office should be the strengthening of the faith and confidence of the people in their government, and that "[e]ven an appearance which might weaken this confidence must be closely scrutinized."
The first consideration is, strictly speaking, not present in the instant situation. A professional service corporation, although subject to special restrictions imposed by Ch. 621, F.S., is a corporation organized pursuant to Ch. 608, F.S., and is not a partnership. Section 621.05. It is true that professional service corporations evolved and were designed primarily for tax purposes, Street v. Sugerman, 202 So.2d 749 (Fla. 1967); but it is also a legal consequence of such organization as a corporate entity that partnership principles, including mutual agency and potentially unlimited liability of partners, are eliminated. [See] 24 Fla. Jur. Partnership s. 6, p. 325. An expression of the concept of limited liability is found in s. 621.07.
It should be noted, however, that even in partnership theory, the doctrine of mutual agency bound a partner only by the actions of his co-partners committed during the course of the partnership. The doctrine did not bind the client (principal) of a partner, when a co-partner performed an act in the absence of actual or apparent authority from that client. See 3 Am. Jur.2d Agency s. 262, p. 628. To the extent that AGO S.C. 67-12 and subsequent opinions hold otherwise, they must be qualified. Thus, a partner is an agent and principal of his co-partners — and, under the new Uniform Partnership Act [s. 620.60, F.S.], of the partnership entity — but is not, without authority, the agent of his co-partners' clients.
This does not mean that the holding of AGO S.C. 67-12, or subsequent opinions, is erroneous. I am of the opinion that the foregoing principles, primarily applicable to tort doctrine and liabilities, should not restrict artificially the applicability of the Standards of Conduct Law, which is intended to prevent private interests, direct or indirect, from conflicting with the proper discharge of a legislator's public duties. Section 112.311, supra. The second aforementioned consideration, which served as a basis for the holding of AGO S.C. 67-12, is a reflection of this legislative policy. And the ruling of The Florida Bar's Committee on Professional Ethics (also relied upon) that it is a conflict of interest for a partner of a legislator to lobby in the Legislature would appear to be equally applicable to a law partnership when it is reorganized as a professional association.
With respect to this general legislative intent, several factors should be noted here: Practically speaking, there is ordinarily no perceptible difference in the working relationship between the partners in a law firm and the attorney-members of a professional service corporation; the business of any client, no matter which attorney-member represents him, financially benefits, directly or indirectly, all attorneys in the professional service corporation; and, as stated previously, the purpose of the disclosure provision of the Standards of Conduct Law is to bring out into the open any potentially conflicting private interests.
Therefore, although a legislator-attorney may not be, strictly speaking, the agent of all regulated business entities represented by the professional service corporation of which he is a member, I am of the opinion that, pending legislative or judicial clarification, he should file a statement disclosing such representation in order to comply with the legislative policy expressed in the Standards of Conduct Law, s. 112.311, F.S.